IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYREE LAWSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1193 |
| | : | |
| SCI PHOENIX'S GINA CLARK, et al. | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                   **February 15, 2023**

Plaintiff Tyree Lawson, currently incarcerated at State Correctional Institution Phoenix ("SCI Phoenix"), brings this lawsuit under 42 U.S.C. § 1983 against four prison employees, claiming his conditions of confinement with regards to a snoring roommate and a dental appointment violated the Eighth Amendment. He also brings a retaliation claim on the basis of the snoring roommate. Defendants move to dismiss the action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because a snoring roommate is not an objectively serious deprivation, and because Lawson does not show a causal link between his roommate assignment and ongoing lawsuits, his Eighth Amendment and retaliation claims based on these facts will be dismissed. As to Lawson's Eighth Amendment claim based on exposure to COVID-19 during a dental appointment, this claim will also be dismissed because the events underlying the claim occurred so early in the pandemic that Defendants could not have known he faced a substantial risk of harm. Therefore, the Motion to Dismiss will be granted.

**FACTS**

Defendants Pamela Sellers, Mandy Sipple, Gina Clark, and Suzette Keys are SCI Phoenix employees sued in their individual capacities. Am. Compl. ¶¶ 2-5, ECF No. 1-11. Lawson brings claims for two discrete sets of facts arising from his incarceration: his roommate assignment from January to November 2020, and a dental appointment on March 17, 2020.

1

In 2018, Lawson filed an official inmate grievance against Clark and two other prison officials. *Id.* ¶ 7. After exhausting the grievance process, he filed a lawsuit in 2018, *Lawson v. Banta*.[1] *Id.* ¶ 8. Litigation in this suit and others continued through 2022. *Id.* ¶¶ 9, 14-16.[2] Lawson alleges a prison official, who is not named as a defendant in this lawsuit, retaliated against him for filing *Banta*. *Id.* ¶¶ 10-11. As a result, in June 2019 Lawson requested a housing unit transfer and prison officials moved him to SCI Phoenix's J Unit. *Id.* ¶ 13. According to the Complaint, Sellers managed J Unit and Clark oversaw cell assignments. *Id.* ¶¶ 13, 37. In December 2019, Lawson's request to transfer to a bottom bunk was granted. *Id.* ¶¶ 17, 19.

Sellers rescinded this decision shortly thereafter and reassigned Lawson to a top bunk. *Id.* ¶¶ 23-26. Another inmate, Davis, was assigned to the bottom bunk of Lawson's cell, though other bottom bunks were available in J Unit. *Id.* ¶¶ 27-28. Davis snored "extremely loudly" and caused Lawson to lose sleep. *Id.* ¶ 35. Prison officials knew of Davis' snoring prior to the assignment. *Id.* ¶¶ 22, 41. Lawson made extensive complaints, including written and verbal communications with Sellers and Clark, and filed official grievances. *Id.* ¶¶ 31-32, 34-35. Lawson also filed six written requests for a different cell assignment. *Id.* ¶ 37. Davis too submitted requests for a reassignment. *Id.* ¶ 40. Further, according to Lawson prison officials asked Davis to tell them Lawson was hitting

---

[1] The Amended Complaint states Lawson filed suit in March 2019, but he cites an Eastern District of Pennsylvania case name and docket number, *Lawson v. Banta*, 18-3670. According to the case docket, it was filed in August 2018. Lawson has "a long history of litigating meritless claims in the United States District Courts." *Lawson v. Delliponte*, No. 19-cv-2432, 2019 WL 3318435, at *1 (E.D. Pa. July 24, 2019) (listing and summarizing six of those cases).

[2] The Amended Complaint only refers to litigation activity in 2019, but the final judgment in *Lawson v. Banta*, referenced in the prior note, was issued in 2022. No. 20-3444, 2022 WL 1772997 (3d Cir. June 1, 2022).

2

him so they could send Lawson to the Restricted Housing Unit. *Id.* ¶ 30. Lawson and Davis remained roommates until November 26, 2020. *Id.* at 4.[3]

In a completely different incident, Lawson had his annual dental checkup on March 2, 2020; the checkup revealed a cavity. *Id.* ¶ 55. Thereafter, Healthcare Director Mandy Sipple scheduled a tooth extraction. *Id.* ¶¶ 58. In between Lawson's checkup and his tooth extraction, the Pennsylvania Governor and Secretary of the Department of Corrections issued guidance related to COVID-19. *Id.* ¶¶ 56-57. This guidance included the Governor's March 10 social distancing order and the suspension of all non-emergency dental visits in SCI Phoenix on March 17. *Id.* ¶¶ 56, 60. Lawson was unaware of the suspension and reported for his appointment the same day. *Id.* ¶ 62. When he arrived, the waiting area had somewhere between twenty-five and thirty-five inmates waiting to see the doctor for "flu-like symptoms." *Id.* ¶ 63. Defendant Suzette Keys was at the front desk in the waiting room, blocked off by a concrete wall and glass partition. *Id.* ¶ 64. The two-inch slot that prisoners normally passed their cards through was sealed. *Id.* ¶ 65. After holding his ID card and dental pass up to the glass partition for Keys, Lawson remained in the waiting area for twenty to twenty-five minutes before his appointment. *Id.* ¶ 66-68. When he went back, staff asked what took him so long. *Id.* ¶ 69. Several days later, an inmate who had been in the waiting room was diagnosed with COVID-19. *Id.* ¶ 70. Within a week, Lawson was "suffering burning like [sic] fluid filling my/plaintiff's [sic] lungs and fevered sweats." *Id.* ¶ 72.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

[3] This citation uses the ECF pagination, as this section of the Amended Complaint does not have a paragraph number.

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly,* 550 U.S. at 556). In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual matter elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

Additionally, the Court must construe pro se filings liberally. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A pro se complaint must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff cannot prove a set of facts which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**DISCUSSION**

Lawson brings Eighth Amendment and retaliation claims in this lawsuit. In Count I, Lawson claims prison officials Pamela Sellers and Gina Clark violated the Eighth Amendment by placing him in a cell with a snoring roommate, thereby subjecting him to sleep deprivation. He also claims this cell assignment was retaliation for ongoing litigation. Because a snoring roommate is not an objectively serious deprivation of life's minimum necessities, Defendants' Motion to Dismiss will be granted on this claim. And since Lawson does not link Sellers and Clarks' actions to his ongoing litigation, the Motion to Dismiss will also be granted on his retaliation claim. In Count II, Lawson claims prison officials Mandy Sipple and Suzette Keys violated the Eighth

Amendment by requiring him to attend a dental appointment at the beginning of the COVID-19 pandemic, and by exposing him to other sick prisoners while he waited for that appointment. Because this dental appointment was extremely early in the pandemic, Lawson has failed to plead facts showing that Sipple and Keys knew he faced a substantial risk of harm and were deliberately indifferent to that risk. Thus, the Motion to Dismiss will be granted as to Lawson's final claim. The Court now turns to the standards governing § 1983 suits, and then addresses each claim in order.

Section 1983 allows private citizens to bring suit for "violations of federal law committed by state actors." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). To bring a § 1983 claim, a plaintiff must (1) show their federal rights were violated, and (2) show the violation was caused by a state actor. *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also show the defendant was personally involved in the alleged violation. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Lawson brings this § 1983 suit pursuant to the Eighth Amendment. The Amendment's ban on cruel and unusual punishment requires prison officials "to provide humane conditions of confinement." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (internal quotation marks and citation omitted). Officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (citations omitted). A prisoner who challenges their conditions of confinement must show objective and subjective elements in a two-prong test. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). First, "the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's

5

necessities.'" *Porter v. Pa. Dept. of Corrections*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, "the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Id.*

Lawson first claims Sellers and Clark violated the Eighth Amendment by assigning him to a cell with a snoring roommate, causing sleep deprivation. This claim fails the first prong of the test, objective, sufficient seriousness, because a snoring roommate is not a form of sleep deprivation so serious as to deny Lawson "the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834; *see, e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("[T]he Constitution does not mandate comfortable prisons."); *Peterkin v. Jeffes,* 855 F.2d 1021, 1027 (3d Cir. 1988) ("[N]oise in the cells, while it may be irritating to some prisoners, cannot fairly be said to inflict cruel and unusual punishment."); *Blue v. Grannis,* No. CIV S–05–1256 GEB EFB P, 2009 WL 347742, at *7 (E.D. Cal. Feb. 11, 2009) ("[T]here was nothing unusual about conflicts based on snoring."). This claim will be dismissed.

In addition to the Eighth Amendment claim, Lawson argues Sellers and Clark "plotted" to place him in a cell with Davis as "retaliation" for several lawsuits Lawson filed against prison staff. Am. Compl. ¶¶ 22, 29, ECF No. 1-11. Though Lawson did not state an Eighth Amendment claim based on his roommate assignment, "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling,* 229 F.3d 220, 224-25 (3d Cir. 2000) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)). To state a retaliation claim,

> a plaintiff must demonstrate that (1) he engaged in a constitutionally protected activity; (2) he suffered . . . adverse action 'sufficient to deter a person of ordinary firmness from exercising his [constitutional rights]; and (3) that the protected

activity was a substantial motivating factor in the . . . decision to take adverse action.

*Whitney v. Wetzel,* 649 F. App'x 123, 126 (3d Cir. 2016) (internal quotation marks and citation omitted) (unpublished opinion). Lawson engaged in a constitutionally protected activity: filing lawsuits against prison officials. *See id.* ("A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim.") Defendants argue, however, that Lawson cannot show a causal link between the litigation and his snoring roommate. Mem. Law Supp. Defs.' Mot. Dismiss 8, ECF No. 4-1.

To show causation for any type of retaliation claim, a plaintiff "must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Whitney,* 649 F. App'x at 126. The Third Circuit has held "that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive." *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014) (citations omitted). Temporal proximity is measured from the date on which the plaintiff first files a complaint. *Id.* Lawson filed a lawsuit against numerous prison officials, including Clark, in August 2018. *See supra* note 1. The alleged retaliatory action, his roommate assignment, started in January 2020 and continued through November 2020. Am. Compl. ¶ 39, ECF No. 1-11. Thus, the period between Lawson filing the *Banta* suit and his snoring roommate assignment spans 16 months, far beyond the 10-day threshold.

Because Lawson cannot show causation through temporal proximity, the Court applies the second test, "timing plus other evidence." *Blakney*, 559 F. App'x at 186 (citation omitted). Other evidence may include a "pattern of antagonism" as well as circumstantial evidence. *Id.* As evidence of antagonism, Lawson points to (1) Sellers' decision to reassign him to a top bunk, though other bottoms bunks were open, and (2) the gossip from Davis that Sellers and another staff member

7

wanted to send Lawson to the Restricted Housing Unit. Am. Compl. ¶¶ 27-28, 30, ECF No. 1-11. As to Sellers, these allegations run into a simple problem: she was never a defendant in the litigation, and Lawson does not allege facts connecting her in any way to his lawsuits. His allegations also fail as to Clark because the actions Lawson points to – the top bunk assignment and gossip from Davis – are not connected to Clark. This leaves the cell assignment as the only alleged retaliatory act, and as explained above, the temporal proximity between filing the lawsuit and the cell assignment is too attenuated to support causation. Lawson thus fails to show a causal link between his lawsuits and his roommate assignment, and so his retaliation claim fails.

Turning to Count II, Lawson claims two different prison officials, Mandy Sipple and Suzette Keys, violated his Eighth Amendment rights at the beginning of COVID-19 by failing to cancel his dental appointment and making him wait with other sick prisoners. Am. Compl. ¶¶ 73-74, ECF No. 1-11. "[B]ecause COVID-19 is a very contagious virus that can cause serious health complications or death in vulnerable people," some courts have found claims based on COVID-19 exposure are sufficiently serious to meet the objective prong of the Eighth Amendment's conditions of confinement test. *Dixon v. United States*, No. 20-5994, 2020 WL 3249231, at *3 (D.N.J. June 16, 2020); *see also, e.g.*, *Bevins v. Kauffman*, No. 1:20-cv-02012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021) ("Defendants do not dispute that the objective prong is met in the instant case."); *but see Wholaver v. Wetzel*, No. 22-492, 2022 WL 2052642, at *3 (E.D. Pa. June 7, 2022) (finding because SCI Phoenixville took steps to reduce COVID-19 risk, plaintiff's argument that the prison should do more did not meet the objective standard). Thus, the claim in this case likely meets the first, objective standard, and Defendants do not challenge it in their Motion to Dismiss. But prisons do not have a duty to eliminate all risk of COVID-19 exposure. *Hope v. Warden Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020). The Court must consider the

second, subjective prong of a conditions of confinement claim: whether prison officials were deliberately indifferent to the prisoner's health or safety. *Porter*, 974 F.3d at 441.

Under the deliberate indifference standard, a prisoner must show the official knew of and consciously disregarded a serious risk to the prisoner's health or safety. *Farmer*, 511 U.S. at 837. "Prison officials who knew of a substantial risk of harm are not liable 'if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Walker v. Wetzel*, No. 22-1357, 2022 WL 4103632, at *1 (3d Cir. Sept. 8, 2022) (quoting *Farmer*, 511 U.S. at 844). As to the response to COVID-19, courts have recognized the "system-wide mitigation efforts" of the Pennsylvania Department of Corrections. *See id.* at *2 (listing the "suspension of in-person visits, screening of staff for the virus, inmate quarantines and lockdowns, and the provision of masks and cleaning materials."); *see also, e.g.*, *Wholaver v. Wetzel*, No. 22-492, 2022 WL 2052642, at *3 (E.D. Pa. June 7, 2022); *Wilkins v. Wolf*, No. 1:20-cv-2450, 2021 WL 1578250, at *2-3 (M.D. Pa. Apr. 22, 2021). Given these measures and the "unprecedented and evolving nature of the pandemic," *Walker*, 2022 WL 4103632, at *2, numerous courts have dismissed Eighth Amendment claims based on COVID-19 exposure. *See Wholaver*, 2022 WL 2052642, at *7 (summarizing cases from around the country that dismissed these types of claims).

The Court agrees with Defendants in this case, who argue Lawson cannot show they knew or should have known he faced a substantial risk of harm given the early stage of the pandemic. Mem. Law Supp. Defs.' Mot. Dismiss 6, ECF No. 4-1. The date of Lawson's dental appointment was extremely early in the pandemic: this Court was still allowing limited court proceedings, and businesses were still open in Pennsylvania. *Id.* at 6-7 (citing Orders from the Eastern District of Pennsylvania and the Governor's Office). The severity of the pandemic was not yet clear, and so Sipple and Keys could not have known Lawson would face a substantial risk of harm.

Reading the Complaint liberally, Lawson argues his appointment should have been canceled because of the prison's policy suspending all non-emergency dental appointments. Am. Compl. ¶¶ 60-61, ECF No. 1-11. However, prison officials are required to provide basic medical treatment for inmates, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and "mere disagreement as to the proper medical treatment" cannot support an Eighth Amendment claim. *Walker*, 2022 WL 4103632, at *3 (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987)). Based on these facts, Lawson has not stated a claim that Sipple and Keys were deliberately indifferent to his health and safety, so this claim will be dismissed.[4]

Because Lawson has not pled an Eighth Amendment or retaliation claim based on his snoring roommate, nor an Eighth Amendment claim based on his dental appointment, no claims remain. Therefore, the Court will grant Defendants' motion to dismiss, and Lawson will be granted leave to amend. An appropriate order follows.

---

[4] Defendants Sipple and Keys also argue they are entitled to qualified immunity, which shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under this doctrine, courts must consider whether a plaintiff has shown a violation of their federal rights and if the right was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A plaintiff's failure to show either element entitles a defendant to immunity from liability and litigation. *Pearson v. Callahan*, 555 U.S. 223, 232-36 (2009). Because Lawson has not pled an Eighth Amendment violation, Sipple and Keys are entitled to qualified immunity on this basis alone. Even if Lawson successfully pled an Eighth Amendment claim, he cannot show his rights vis-à-vis COVID-19 exposure were clearly established at the time of the underlying events. Though the right to "protection from heightened exposure to a serious communicable disease" was clearly established, as discussed above, the severity of COVID-19 was not yet known. *Hamilton v. Allison*, 21cv2032-CAB-AHB, 2022 WL 17858021, at *4 (S.D. Cal. Dec. 22, 2022) (citing, *e.g.*, *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Hutto v. Finney*, 473 U.S. 678, 682-83 (1978)). Thus, Sipple and Keys did not violate Lawson's clearly established right to be free from heightened exposure to a serious disease because COVID-19's seriousness was not yet clear.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.